# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| STEVEN WILLIAMS, | ) |
|     Plaintiff, | ) ) ) |
| v. | )   Case No. CV408-203 |
| THALRONE WILLIAMS, *Warden;* ANGELA GRANT, *Mental Health Director;* LIEUTENANT MORALES; and FOUR UNKNOWN PRISON GUARDS, | ) ) ) ) ) ) |
|     Defendants. | ) |

## REPORT AND RECOMMENDATION

## I. INTRODUCTION

The Court **VACATES** its earlier Report and Recommendation (doc. 5) in favor of this recommendation.[1] Plaintiff Steven Williams brings this 42 U.S.C. § 1983 civil rights action against "Wheeler Correctional Facility" personnel for, inter alia, violating his Eighth Amendment rights. Doc. 1. The Court will now screen his complaint under 28 U.S.C.

---

[1] The Court had recommended that plaintiff's case be dismissed because he failed to file required *in forma pauperis* (IFP) forms. Doc. 5. This was error, however, because plaintiff, after moving for leave to proceed IFP, doc. 3, subsequently paid the Court's filing fee. *See* Clerk's Dec. 3, 2008 entry.

§ 1915A (courts must identify "cognizable claims" filed by prisoners or other detainees and dismiss claims which are frivolous, malicious, fail to state a claim for relief, or seek monetary relief from a defendant immune from such relief); *see also* 42 U.S.C. § 1997e(c)(2).

## II. BACKGROUND

Williams alleges that prison officials knowingly administered to him a medically dangerous mix of drugs (Prozac and Ultram), thus rendering him "delusional and paranoid."[2] Doc. 1 at 5, 7. He repeatedly sought medical attention but was ignored (by "deliberately indifferent" medical personnel, he alleges), so that on April 17, 2007, his

> mental health condition worsened. I slide [sic] into delusion and paranoia after prison guards came in the dorm teasing and making fun of me about disrupting the head count. They threatened to write me up on a disciplinary report (DR) which I greatly feared they would see me as a trouble maker. This caused me to go into the lavatory and cut my wrist with a razor in an attempted suicide. Minutes later, Lieutenant Morales and at least four officers came in. I have a very bad right knee (one of my legs is longer than the other one) and my leg had gone to sleep after sitting on the toilet a long time. I did not have my hearing aids in and things appeared hazy, lots of confusion. So when the officers lifted me up, I collapsed to the floor and could not get up. One guard yelled, "Get

---

[2] Plaintiff references "Ultrum" but the Court presumes that he means Ultram. *See* Physician's Desk Reference, located at http://www.pdrhealth.com/drugs/rx/rx-mono.aspx?contentFileName=Ult1467.tml&contentName=Ultram&contentId=608 (last visited May 12, 2009) ("If Ultram is taken with certain other drugs, the effects of either could be increased, decreased, or altered. It is especially important to check with your doctor before combining Ultram with the following: . . . Prozac . . . .").

2

> up, or get dragged across the asphalt!" After I could not get up, he put his foot in my side and rolled me over on my stomach. I had tendinitis in my wrist and Lt. Morales let them put the handcuffs on me very tight[,] causing much pain. Lt. Morales then ordered the prison guards to spread a blanket and put me in it.

*Id.* at 8-9 (paragraph numbering omitted). The guards then lifted the four corners of the blanket (disregarding, plaintiff alleges, the "correct procedure[,] which is to fetch a wheelchair or stretcher for an incapacitated inmate") then carried him outside and lowered it to drag him across about 50 feet of asphalt. *Id.* at 9. "The asphalt tore through the blanket, dragging the handcuffs with [plaintiff's] wrists turned awkward and the handcuffs pressing hard against [his] wrists." *Id.*

Plaintiff screamed in great pain but Morales laughed and said, "Oh, is he still alive?" *Id.* Morales then "walked along letting them torture me in this way." *Id.* Once at "G-Bldg.," the guards rolled plaintiff out of the blanket and "onto the floor like they were rolling logs." *Id.* Because the handcuffs by this time were ruined from dragging, "Morales ordered a guard to fetch bolt cutters to cut them off my wrists." *Id.* at 10.

The men then stripped Williams naked and left him "in a cold bare cell for several hours until they brought me a paper gown." *Id.* "On[e]

3

officer tried to get me to talk by putting the flame of his cigarette lighter against my wrist. I screamed in pain. He then put his lighter flame against my forearm and made me scream again." *Id.*

## III. <u>ANALYSIS</u>

As detailed by the Eleventh Circuit,

> [t]he Eighth Amendment ban on cruel and unusual punishment protects prisoners from punishment involving "the unnecessary and wanton infliction of pain [and] the imposition of pain totally without penalogical justification." *Evans v. Dugger*, 908 F.2d 801, 803 (11th Cir.1990). When prison guards use force in the context of a security measure, the issue ultimately turns on "whether force was applied in good effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-321, 106 S.Ct. 1078, 85 L.Ed.2d 251(1986) (*quoting Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). To establish a claim for excessive force, the plaintiff must show that (1) the defendants acted with a malicious and sadistic purpose to inflict harm and (2) that more than a de minimis injury resulted. *See Johnson v. Breeden*, 280 F.3d 1308, 1321 (11th Cir. 2002).

*McReynolds v. Ala. Dep't of Youth Servs*, 204 F. App'x 819, 821-22 (11th Cir. 2006); *Lee v. Griner*, 188 F. App'x 877, 878 (11th Cir. 2006). "Liability can also be imposed on prison guards present at the scene for failure to take reasonable steps to prevent excessive force by other guards." *McReynolds,* 204 F. App'x at 821-22; *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002) (citations omitted) ("an officer who is

4

present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable for his nonfeasance").

Prisoners like Williams face a special hurdle in this area, however. The Prison Litigation Reform Act provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Williams thus must allege more than a de minimis physical injury, though it need not be significant. *Harris v. Garner*, 190 F.3d 1279, 1286-87 (11th Cir.1999), *vacated in part and reinstated in part on reh'g*, 216 F.3d 970 (11th Cir. 2000) (en banc); *Hernandez v. Schill*, 2008 WL 4938410 at * 2 (N.D.Fla. Nov. 17, 2008) (unpublished).

Williams's pleadings place him over the line. He has alleged not only wanton and gratuitous physical pain ("asphalt dragging"), but malicious and sadistic conduct (burning him) plus deliberate indifference (recklessly prescribing delusion and paranoia inducing pharmaceuticals). However, he has not shown that he states a claim against Warden Williams, since he evidently relies only upon the respondeat superior

doctrine in that he seeks to recover against these supervisory officials solely because they employed a tortfeasor. Such a theory of liability is not available under § 1983. *Monell v. Dep't Soc. Servs.*, 436 U.S. 658, 691 (1978). Rather, a supervisory official (or entity) may be held responsible for a constitutional tort only where the official directly participated in the alleged constitutional deprivation or there is some other causal connection between the official's acts or omissions and the alleged constitutional deprivation. *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir.1990); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir.1988) (per curiam). *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir.1986); *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1442 (11th Cir.1985). A causal connection between defendant's acts or omissions and the plaintiff's injury is essential to establish liability, and the standard for holding a supervisor liable for the acts of his subordinates is "'extremely rigorous.'" *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (citation omitted). Because Williams has alleged neither direct participation nor any other causal connection between the warden's conduct and his alleged injury, he has failed to state a claim against Warden Williams.

## IV. CONCLUSION

Accordingly, the Court **VACATES** its earlier Report and Recommendation. Doc. 5. Plaintiff's complaint against all but Warden Thalrone Williams survives screening, so the Clerk should be **DIRECTED** to forward a copy of the complaint along with this Order to the United States Marshal for service upon the remaining defendants. Fed. R. App. P. 4(c)(3). Finally, the Court should **DISMISS** defendant Thalrone Williams.

**SO REPORTED AND RECOMMENDED** this <u>13th</u> day of May, 2009.

<u>/s/ **G.R. SMITH**</u>
**UNITED STATES MAGISTRATE JUDGE**
**SOUTHERN DISTRICT OF GEORGIA**